UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION – DETROIT

In re:

STEVEN LEE OSTERDOCK, and  Case No. 13-49969-wsd
JESSICA LEE OSTERDOCK,  Hon. Walter Shapero
FKA JESSICA LEE SAURO,  Chapter 7

    Debtors.
_____/

CHARLES MEADOWS JR.

    Plaintiff,  Adv. Pro. No. 13-04940

v.

STEVEN LEE OSTERDOCK, and
JESSICA LEE OSTERDOCK,
FKA JESSICA LEE SAURO,

    Defendants.
_____/

## OPINION

### INTRODUCTION

Charles Meadows Jr. ("Plaintiff") filed this adversary proceeding against Steven and Jessica Osterdock ("Debtors"), seeking denial of their discharge and non-dischargeability of a debt. The Court held a trial on September 17, 2014 and concludes that the discharge should not be denied and the debt is dischargeable.

### PROCEDURAL HISTORY

Debtors, represented by an attorney, filed their Chapter 7 bankruptcy petition on May 15, 2013. On August 12, 2013, Plaintiff timely filed this adversary proceeding against them, claiming that he and his wife Laurie Meadows (not a named plaintiff) leased a house to Debtors,

1

who subsequently breached that lease. Plaintiff apparently obtained a state court judgment against Debtors. Debtors' Schedule F listed a joint debt to Plaintiff in the amount of $9,464. Plaintiff here seeks a determination that this debt is non-dischargeable under 11 U.S.C. § 523(a)(2) and a denial of Debtors' discharge under 11 U.S.C. § 727. Neither Plaintiff nor Debtors are represented by counsel (Debtors' attorney appeared in this adversary proceeding but was permitted to withdraw prior to trial).

Non-dischargeability of Debt Under 11 U.S.C. § 523(a)(2)

Plaintiff's complaint asserted a cause of action under 11 U.S.C. § 523(a)(2) that Plaintiff often refers to as "contractual fraud," but without specifying whether he was proceeding under subsection (A) or (B) of that provision. The trial, evidence, and arguments effectively invoke only § 523(a)(2)(A) and the Court will decide the matter on that basis. That provision requires a plaintiff to prove that a debtor incurred the debt by " false pretenses, a false representation, or actual fraud[.]" To do so, the law requires that a plaintiff must prove *all four* of the following elements by a preponderance of the evidence: (a) there was a material misrepresentation that, at the time it was made (in this case, the time the lease was signed), the debtor knew was false or was made with gross recklessness as to its truth; (b) the debtor intended to deceive the plaintiff; (c) the plaintiff justifiably relied on the misrepresentation; and (d) the plaintiff's reliance was the proximate cause of his loss. In re Rembert, 141 F.3d 277, 280 (6th Cir. 1998). When a plaintiff alleges non-dischargeability of a debt, those allegations are strictly construed in favor of the debtor.

At the trial, at which Plaintiff, his wife, and both Debtors testified, Debtors offered 5 exhibits and Plaintiff offered 26. Plaintiff' action is based on a certain document signed at the

time the lease with Debtors was entered into. The one page document is entitled "Employment References" and was a form that calls for certain information. It was completed in handwriting (and as underlined) as follows:

> NAME OF EMPLOYER <u>TOMS FAMILY AUTO</u>
> EMPLOYER ADDRESS <u>21915 ALLEN RD</u>
> EMPLOYER PHONE NUMBER <u>692-8273</u>
> NUMBER OF YEARS EMPLOYED <u>11yrs</u>
> OCCUPATION <u>Auto Mechanic</u>
> HOME PHONE NUMBER <u>[phone number given] STEVE [phone number given]</u>
> <u>JESSICA</u>
>
> ***
>
> REFERENCES (NAME/PHONE)
> 1. <u>Sharon Edson – [phone number given]</u>
> 2. <u>Genevia Remenoski [phone number given]</u>
>
> ***
>
> EMERGENCY CONTACT PERSON/PHONE <u>Alex Bash [phone number]</u>

At the bottom of the form is stated "I declare that the statements above are true and correct. I hereby authorize verification of references given." It was signed by Mrs. Osterdock only and dated June 10, 2011. The lease is also dated June 10, 2011 and its term is stated to be beginning July 1, 2011 and ending July 6, 2012. It is signed by Plaintiff's wife and by both Debtors. Plaintiff's argument is that the "11yrs" response to the question "Number of Years Employed" was false and fraudulent because Mr. Osterdock in fact had been employed by the specifically named employer only about a year and a half, as evidenced by Debtors Schedule I, which listed Mr. Osterdock's length of employment with "Tom's Family Autocare" (also at the same 21915 Allen Road address) at "1.5 years".

Mr. Osterdock's credible testimony at the trial, together with the exhibits, established the following timeline relating his employer(s) and his employment. Between August 2000 and

3

September 2006, Mr. Osterdock was employed by Pro Auto Care-Woodhaven, L.L.C., which was incorporated in 1999 and owned by John and Alice Timko at its place of business at 21915 Allen Road. Between September 2006 and January 2007, that business ceased operating. On October 18, 2006, the corporate status of Pro Auto Care-Woodhaven, L.L.C. was dissolved. In January 2007, one of Mr. Osterdock's fellow mechanics reopened the business as Tom's Family Auto Care at the same address. The business, as well as Mr. Osterdock's employment there, continued in substantially the same manner as it had under the prior ownership and, as noted, at the same physical location. The evidence at trial also was that (a) neither Plaintiff nor his wife checked any of the listed references or called the listed employer; and (b) apparently Plaintiff and/or his wife allowed Debtors to move into the property in late June 2011, prior to the July 1, 2011 lease commencement date.

First, the Court concludes that it was just as reasonable for laypeople such as Debtors to have concluded that the questionnaire form was asking for the number of years that Mr. Osterdock had been an auto mechanic and/or had been employed at a particular location; as opposed its asking for the number of years he had actually been employed by the specific employer or formal business entity. This might be a reasonable inference given that Tom's Family Auto Care was the successor business entity to Pro Auto Care-Woodhaven, L.L.C. and that Mr. Osterdock's employment with each entity was substantially the same, and continued at the same location.

Second and more importantly, the Court concludes that, after having taken live testimony from Debtors, even if the subject question is construed in the way that Plaintiff argues, the record and the testimony do not come close to meeting Plaintiff's burden that Debtors had the required intent to deceive.

Third, the Court also concludes that Plaintiff has not met his burden of proving the required justifiable reliance on Debtors' allegedly false statement. "Justifiable reliance" is discussed in <u>In re McClintic</u>, 383 B.R. 689 n.2 (S.D. Ohio 2008) and involves an investigation into the circumstances of the particular facts of the case, rather than what a hypothetical "reasonable person" would have relied upon. The Court finds that Plaintiff did not justifiably rely on Debtors' alleged false statements. Plaintiff's statement of the importance of the length of Mr. Osterdock's employment to Plaintiff's decision to lease the house to Debtors is belied by the fact that neither Plaintiff's wife nor Plaintiff called any of the disclosed three references. Under these circumstances, given the information supplied, the ease of their ability to verify such information, and the amount of time between the signing of the lease and the commencement of the lease term, they had sufficient opportunity and ability to do so. Whatever reliance Plaintiff had on the pertinent statement was not justifiable, at least for purposes of meeting the legal requirements.

Fourth and finally, even if Debtors are seen to have made a false statement with intent to defraud, Plaintiff has not proven such misstatement was the proximate cause of his damages, also as noted, a separate legal requirement. In this connection, Plaintiff repeatedly stated he would not have leased the house to Debtors if Mr. Osterdock's length of employment been truthfully disclosed (with the specifically named employer). Even if so, that is not enough to meet his legal burden in this type of case. "Proximate causation" means that the financial injury was sufficiently connected to, and a foreseeable result of, the alleged misrepresentation. This is distinguishable from "actual causation," which means that, had the alleged wrong not occurred, the injury would not have followed. These concepts are discussed more fully in <u>In re Olson</u>, 454 B.R. 466, 473 (Bankr. W.D. Mo. 2011) and <u>Paroline v. United States</u>, 134 S. Ct. 1710, 1719

5

(2014). There is insufficient evidence that Mr. Osterdock's job longevity or security (or lack thereof) played any material role in Debtors' breach of the lease or Plaintiff's damages. On the contrary, Mr. Osterdock indicated in his bankruptcy petition that he was still employed by "Tom's Family Autocare" on the bankruptcy filing date, and he was apparently still employed there as of the date of the trial. It was not clear from the evidence exactly what caused Debtors to stop paying rent or to breach the lease. But whatever that reason might have been can be seen as a separate intervening event which, rather than any misstatement on the indicated questionnaire, constituted the "proximate cause" of Plaintiff' damages.

Keeping in mind that Plaintiff's burden can only be satisfied by proving all four of the indicated elements, the Court concludes Plaintiff has not met that burden on any one of them, let alone all four. A failure to prove any one of them would preclude Plaintiff from prevailing, and so his requested relief of non-dischargeability of the debt is denied. As frustrating as this might be to Plaintiff, what happened here is best characterized as a simple breach of contract, and not as false pretenses, false representation, or actual fraud; and, damages for breach of contract (even if the breach is intentional) are generally dischargeable. See In re Killgrove, 2014 WL 4187988 (E.D. Mich. Aug. 22, 2014).

## Denial of Discharge Under 11 U.S.C. § 727

Plaintiff did not specify what subsections of § 727 upon which he relied. However, reading the allegations in his complaint, they appear to invoke only §§ 727(a)(3) and (a)(4), which state:

> (a) The court shall grant the debtor a discharge, unless…
>
> > (3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;

    (4) the debtor knowingly and fraudulently, in or in connection with the case--

     (A) made a false oath or account;

     (B) presented or used a false claim[.]

Plaintiff bears the burden of proving all elements by a preponderance of the evidence and this statute is liberally construed in favor of Debtors. In re Zhang, 463 B.R. 66, 78 (Bankr. S.D. Ohio 2012). Plaintiff often refers to his § 727 allegations as "bankruptcy fraud" and "perjury under oath."

  First, Plaintiff alleges that Debtors inflated their debts on their filed bankruptcy schedules. The record does not contain any credible evidence that such was the case. In this connection, it is to be noted, reviewing the Joint Final Pretrial Statement and Plaintiff's proposed exhibits (many of which were not offered into evidence), the apparent basis for Plaintiff's claim is Debtors' credit reports, which Plaintiff argues show information that varies from the filed schedules. The credit reports themselves are not, without more, introducible into evidence, and Plaintiff neither listed nor had any required witnesses relating to such admissibility. The same is true with reference to other potential exhibits that might have afforded some factual basis for Plaintiff's assertions. In this connection, it is also to be noted that the Chapter 7 Trustee, who represents Debtors' bankruptcy estate on behalf of the creditors, classified this bankruptcy as a "no asset" case. That means that there are no non-exempt assets that the Trustee could liquidate and distribute to the creditors. Debtors are represented by an attorney in their main bankruptcy case and had no incentive to inflate their debts because that would not affect the outcome of the bankruptcy case (and would not injure Plaintiff), which also reinforces the lack of fraudulent intent.

Second, Plaintiff alleged that Debtors made other false or inconsistent statements. It is not enough for a creditor to point out and prove false or inconsistent statements. Rather, there must also be sufficient proof that such were made both *knowingly and fraudulently*. Plaintiff asserted that, because Debtors' 2011 income figures on their Statement of Financial Affairs indicates Mr. Osterdock earned wages of $23,412, but his 2011 W-2 statement indicates wages of $19,800, there must be undisclosed income of the difference of those two amounts. Plaintiff alleges that Mr. Osterdock had separate and additional employment that was undisclosed in his bankruptcy schedules. Both Debtors testified credibly this was not the case. Mr. Osterdock apparently had performed some independent automotive repair work out of his home and indicated that he paid taxes on that income. It is also worth noting that the Chapter 7 Trustee, who had a duty to investigate Debtors' income, presumably looked into the matter and found no reason to file any action or investigate further. The Court is not persuaded that the noted discrepancy or any other discrepancy (which was not particularly material in any event) was fraudulent. There might be some small question about the "knowing" requirement, but there is a complete absence of anything that can be considered "fraudulent." As noted, Debtors (and the attorney who filed the bankruptcy petition for them) had no incentive to fraudulently misstate the income.

Third, Plaintiff alleged at trial that Debtors failed to turn over various documents in the discovery process. Indeed, there was some difficulty in the discovery process in this case, even during the times when Debtors were represented by an attorney. The Court's second order regarding Plaintiff' Motion to Compel (Dkt. 60) indicated:

> the Court having reviewed the affidavits and determined that such efforts by Defendants, if completed as described in the affidavits, are sufficiently compliant with their burden of production; NOW THEREFORE:

8

> IT IS HEREBY ORDERED that Plaintiff's Motion to Compel Responses to Requests for Production of Documents has been resolved by the above-described procedures.

Had that disclosure not been completed as indicated in the affidavits, Plaintiff had ample opportunity to pursue the matter further, but did not, and cannot wait until trial to allege that Debtors' discharge should be denied for failure to comply with discovery requests. Further, the Court concludes that Debtors' further compliance with any discovery request would not have made a difference in the result.

Fourth, Plaintiff also appeared to allege that Debtors failed to disclose additional information relating to their financial affairs in their bankruptcy petition. Any evidence as to such would have required third party testimony and/or evidence. No third party witnesses were listed in the Joint Final Pretrial Order. Any supporting documents were not offered and put into evidence. Possibly (and likely any and all of) such documents were attached to the Joint Final Pretrial Order and only some were put into evidence. A cursory review of those documents reveals they would not, in any event, if put into evidence, have sufficiently supported Plaintiff's § 727 claims. Accordingly, Plaintiff's requested relief for denial of discharge is denied, keeping in mind that (a) the law requires that the benefit of the doubt be given to Debtors in such cases and (b) Debtors' testimony and the record as a whole does not show the required fraudulent intent.

## CONCLUSION

The relief Plaintiff seeks in his complaint is denied in its entirety. The Court will enter an appropriate order.

9

**Signed on October 07, 2014**

                                                /s/ Walter Shapero
                                        Walter Shapero
                                        United States Bankruptcy Judge